Slip Op. 18-130

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HEZE HUAYI CHEMICAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. <br><br> CLEARON CORP. AND OCCIDENTAL CHEMICAL CORPORATION, <br><br> Defendant-Intervenors | Before: Jane A. Restani, Judge <br><br> Court No. 15-00027 |

**OPINION AND ORDER**

[Commerce's Final Results in the Administrative Review of Commerce's antidumping duty order on chlorinated isocyanurates from the People's Republic of China are remanded for Commerce to apply the average of the zero rates assessed against the mandatory respondents to Heze Huayi Chemical Co., Ltd., for the 2012-2013 period of review.]

Dated: September 28, 2018

    Gregory Menegaz, Alexandra Salzman, James Horgan, and John Kenkel, deKieffer and Horgan, PLLC, of Washington, D.C., for Plaintiff Heze Huayi Chemical Co., Ltd.

    David D'Alessandris and Sonia Orfield of the United States Department of Justice, of Washington D.C. With them on the were Joseph Hunt, Acting Assistant Attorney General, Jeanne Davidson, Director, and Patricia McCarthy, Assistant Director. Of counsel was David Richardson of the Department of Commerce, of Washington, D.C., for the Defendant.

    James Cannon, Jr., Jonathan Zielinski, and Ulrika Skitarelic Swanson, Cassidy Levy Kent (USA), LLP, of Washington, D.C., for the Defendant-Intervenors Clearon Corporation and Occidental Chemical Corporation.

**Restani, Judge**: This action challenges the final results of the U.S. Department of Commerce ("Commerce")'s administrative review of chlorinated isocyanurates ("chlorinated isos") from the People's Republic of China ("PRC") for the 2012-2013 period of review ("POR"). See Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013, 80 Fed. Reg. 4539 (Dep't Commerce Jan. 28, 2015) ("Final Results"); see also Decision Memorandum for the Final Results of Antidumping Duty Administrative Review: Chlorinated Isocyanurates from the People's Republic of China; 2012-2013, A-570-898, POR: 6/1/12-5/31/13 (Jan. 21, 2015) ("I&D Memo"). Plaintiff Heze Huayi Chemical Co., Ltd. ("Heze") asks the court to remand the case to Commerce with instructions to assign Heze an antidumping rate based on an average of the zero rates assigned to the mandatory respondents or else calculate an individual margin based on record evidence. See Plaintiff Heze Huayu Chemical Co., Ltd. Memorandum in Support of Motion for Judgment on the Agency Record at 30 (Apr. 6, 2015) ("Heze 56.2 Br."). Defendant United States ("the Government") asks for a remand in the light of the intervening decision in Albemarle Corp. v. U.S., 821 F.3d 1345 (2016). Defendants Supplemental Brief and Motion for a Voluntary Remand at 6 (June 21, 2016) ("U.S. Supp. Br."). Defendant-Intervenors Clearon Corp. and Occidental Chemical Company ("Clearon and Occidental") argue that the case should be remanded to Commerce for it to re-open the record and make a determination. Supplemental Brief of Clearon Corp. and Occidental Chemical Corporation at 5–6 (June 21, 2016) ("Clearon Supp. Br."). For the reasons stated below, the case is remanded to Commerce with direction to assign a zero rate to Heze for the relevant period of review.

## BACKGROUND

On August 1, 2013, Commerce initiated an administrative review of the antidumping duty ("AD") order on chlorinated isos from the PRC covering the period of review ("POR") from June 1, 2012 through May 31, 2013. <u>Decision Memorandum for the Preliminary Results of the 2012–2013 Antidumping Duty Administrative Review: Chlorinated Isocyanurates from the People's Republic of China</u>, A-570-898, POR: 6/1/12-5/31/13, at 2 (July 17, 2014) ("<u>Prelim I&D Memo</u>"). Amongst a pool of five separate rate applications, Commerce selected the two largest exporters as mandatory respondents–Hebei Jiheng Chemical Co., Ltd. ("Jiheng") and Juancheng Kangtai Chemical Co., Ltd. ("Kangtai"). <u>Id.</u> The third largest respondent–Heze Huayi–was neither selected to be a mandatory nor a voluntary respondent, despite Heze's requests to be considered as such. See <u>Id</u>; Heze 56.2 Br. at 4–5; U.S. Resp. Br. at 4–5. Heze filed suit challenging Commerce's decision not to select it as a respondent in either capacity, while the Government contended that this action was proper, in particular given Heze's late submission for individual consideration. <u>See</u> Heze 56.2 Br. at 8–17; Defendant's Response to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record ("U.S. Resp. Br.") at 13–15. Clearon Corp. put forth similar arguments to those of the Government with regards to the respondent selection issue. <u>See</u> Response Brief of Clearon Corp. and Occidental Chemical Corporation (June 8, 2015) ("Clearon Resp. Br.") at 7–13.

In addition to the respondent selection claims, Heze challenged the assigned antidumping duty rate. Heze 56.2 Br. at 17–27. In the light of the zero rate assigned to the mandatory respondents, Heze contended that the 53.15% rate it was assigned was not supported by

substantial evidence. Id. at 17–20.[1]  The Government and Clearon initially disagreed arguing that it is Commerce's "general rule" to exclude zero rates when determining the proper non-respondent rate.  U.S. Resp. Br. at 26; Clearon Resp. Br. at 14.  In their initial briefs, Defendant and Defendant-Intervenor also argued that this practice is consistent with the statute.  U.S. Resp. Br. at 26–27; Clearon Resp. Br. at 13–15.

During the pendency of this action, the Federal Circuit issued its opinion in Albemarle Corp. v. United States, 821 F.3d 1345 (2016).  In that decision, the court held that normally Commerce should average the zero or de minimus rates of mandatory respondents in determining the rates of non-examined parties.  See Id. at 1354.

In the light of Albemarle, the court asked the parties to submit supplemental briefing on the decision's impact on this proceeding.  Heze argues that given the similarity between it and the plaintiff in Albemarle, the court should remand the issue to Commerce with instructions to use the "expected method" and apply the zero rate to Heze for the POR.  Plaintiff's Supplemental Brief Concerning the Impact of the Court of Appeal for the Federal Circuit's Decision in Albemarle ("Heze Supp. Br.") at 4–12.  Clearon disagrees arguing that Albemarle is distinguishable and that if the action is remanded, then Commerce should be permitted to reopen the record to assess the proper rate against Heze. Clearon Supp. Br. at 4–6.  The United States requests a remand to consider the impact of Albemarle. U.S. Supp. Br. at 5–6.

---

[1] This matter was assigned to this judge on September 4, 2018. Order of Reassignment, Doc. No. 78.  At a conference on September 11, 2018, Heze agreed that there is no need to examine its other data if it receives a rate of zero based on the rate of the selected mandatory respondents. Conference Call, Doc. No. 80.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will uphold Commerce's final results in an antidumping review unless those results are "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

In view of the intervening precedent of Albemarle, the resolution of this matter is made substantially easier. The Federal Circuit Court of Appeals found Commerce's practice of disregarding zero or de minimus mandatory respondent rates when determining the rates of non-respondents to be inconsistent with the Uruguay Round Agreements Act's[2] "expected method."

---

[2] The text of the relevant section of the Statement of Administrative Action accompanying the Uruguay Round Agreements Act reads:

> 2) All Others Rate Recognizing the impracticality of examining all producers and exporters in all cases. Article 9.4 of the Antidumping Agreement permits the use of an all others rate to be applied to non-investigated firms. To implement the Agreement, section 219(b) of the bill adds section 735(c)(5)(A) to the Act which provides that the all others rate will be equal to the weighted-average of individual dumping margins calculated for those exporters and producers that are individually investigated, exclusive of any zero and de minimis margins, and any margins determined entirely on the basis of the facts available. Currently, in determining the all others rate, Commerce includes margins determined on the basis of the facts available.
>
> Section 219(b) of the bill adds new section 735(c)(5)(B) which provides an exception to the general rule if the dumping margins for all of the exporters and producers that are individually investigated are determined entirely on the basis of the facts available or are zero or de minimis. In such situations, Commerce may use any reasonable method to calculate the all others rate. The expected method in such cases will be to weight-average the zero and de minimis margins and margins determined pursuant to the facts available, provided that volume data is available. However, if this method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for noninvestigated exporters or producers, Commerce may use other reasonable methods." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103–316 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201; see also 19 U.S.C. § 3512(d)(noting that the statement of administrative action

See Albemarle, 821 F.3d at 1354. Albemarle, however, made clear that under some circumstances deviation from this expected calculation method may be reasonable: when there is evidence that the dumping margins have not changed from period to period (and thus the assignment of a rate from a previous review might be appropriate) and when, in the adverse facts available context, "Commerce is allowed to consider deterrence as a factor." Id. at 1357. In Albemarle, the Court found that neither circumstance was present in that case given evidence that the dumping margin had changed over time and that the non-selected party had fully cooperated with the review, and, in fact, had requested to be individually examined. Id. at 1357–58.

Here, neither specified circumstance for deviation from the expected method occurred. First, there is clear evidence that the dumping margins have changed given the mandatory respondents were assigned a zero rate in this review, while they were assigned significant rates in the review immediately prior.[3] See Final Results; Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011-2012, 79 Fed. Reg. 4875 (Dep't Commerce Jan. 30, 2014).

Second, like the plaintiff in Albemarle, Heze's request that Commerce individually exam it was denied. See Albemarle, 821 F.3d at 1349; Prelim I&D Memo at 2; Heze 56.2 Br. at 4–5; U.S. Resp. Br. at 4–5. Additionally, despite being rejected as both a mandatory and voluntary

---

"shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application.").

[3] In the 2011–2012 POR, Commerce assigned a 47.17% rate to Hebe Jiheng Chemical Co., Ltd. and a 59.12% rate to Juancheng Kangtai Chemical Co., Ltd. Chlorinated Isocyanurates from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011–2012, 79 Fed. Reg. 4875 (Dep't of Commerce Jan. 30, 2014).

respondent, Heze still submitted documentation Commerce requested of the selected mandatory respondents, albeit arguably after the deadline.  See Heze 56.2 Br. at 13–14; U. S. Resp. Br. at 4. In view of Heze's repeated attempts to cooperate with Commerce, deterrence is not a reasonable reason to deviate from the expected method of averaging the rates assigned to mandatory respondents.

Given that the Federal Circuit left open that other circumstances may exist that could make deviation from the expected method reasonable, the court asked the United States during the conference of September 11, 2018, whether there was any reason for Commerce to do anything other than apply the zero rate to Heze in this circumstance.  The United States responded that no such reason existed.  See United States Response to Court's September 12, 2018, Order at 2.  The court concludes there is no reason for further examination of any evidence and remands this action with instructions for Commerce to apply a zero rate to Heze for the 2012–2013 POR.

## CONCLUSION

For the foregoing reasons, the court remands this matter for Commerce to apply the mandatory respondent's averaged zero rate to Heze Huayi.  Commerce shall file its remand determination with the court on or before 21 days of the issuance of this opinion.  As there is no new action possible that could require further briefing, the court does not set a further schedule, but will enter judgment upon receipt of the conforming determination.

    /s/Jane A. Restani    
Jane A. Restani
Judge

Dated:  September 28, 2018
      New York, New York